IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TALON J. H., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 23-cv-00027-SH |
| MARTIN J. O'MALLEY,[1] Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Talon J. H. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying his claims for disability benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, 1381-1383f. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses and remands the Commissioner's decision denying benefits.

**I.    Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also id*. § 1382c(a)(3)(A) (regarding disabled individuals). The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of

---

[1] Effective December 20, 2023, pursuant to Fed. R. Civ. P. 25(d), Martin J. O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

substantial gainful work which exists in the national economy . . . ." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520.[2] To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).[3] "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek*

---

[2] *See generally* 20 C.F.R. § 416.920 for Title XVI. (Where possible, the body of this opinion will reference the Title II regulations and provide, the first time mentioned, a parallel citation to Title XVI.)

[3] *See generally* 20 C.F.R. § 416.960 for Title XVI.

2

*v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Background and Procedural History

Plaintiff applied for Title II and Title XVI disability benefits in February 2021. (R. 245-50, 254-55.) In his applications, Plaintiff alleged he has been unable to work since July 27, 2020, due to conditions including schizophrenia, bipolar disorder, moderate depression, severe anxiety, and a mood disorder. (R. 245, 254, 301.) Plaintiff was 23 years old on his last insured date, June 30, 2022, and at the time of the ALJ's decision. (R. 19, 25, 245.) He has a high school education and past relevant work as a diesel mechanic helper, a composite job in which the claimant also performed duties of an auto body repair helper. (R. 63-64, 302.)

Plaintiff's claims were denied initially and upon reconsideration. (R. 135-41, 150-57.) Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). (R. 31-70, 158-59.) The ALJ denied benefits and found Plaintiff not disabled.

3

(R. 17-25.) The Appeals Council denied review on November 16, 2022 (R. 1-5), rendering the Commissioner's decision final, 20 C.F.R. § 404.981.[4] Plaintiff now appeals.

## III. The ALJ's Decision

In his decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through June 30, 2022. (R. 19.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (*Id.*) At step two, the ALJ found Plaintiff had the following severe impairments: (1) depression; (2) schizophrenia; (3) anxiety; (4) substance addiction disorders; (5) posttraumatic stress disorder; and (6) attention-deficit/hyperactivity disorder. (R. 19-20.) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 20-21.)

The ALJ then determined Plaintiff had the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations":

> [Claimant is] able to understand, remember and carry out simple, routine and repetitive tasks with routine supervision, make simple work task decisions, able [to] focus for two hour periods with routine work breaks[,] able to interact appropriately with supervisors and co-workers for incidental work purposes, no interaction with the general public, and can respond appropriately to changes in a routine work setting which are gradually introduced and infrequent.

(R. 21.) The ALJ provided a recitation of the evidence that went into this finding. (R. 21-23.) At step four, the ALJ found Plaintiff unable to perform his past relevant work. (R. 23-24.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as industrial cleaner, linen checker, and cook helper. (R. 24-25.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 25.)

---

[4] *See generally* 20 C.F.R. § 416.1481 for Title XVI.

**IV.    Issues**

On appeal, Plaintiff asserts the ALJ erred by: (1) failing to resolve an apparent conflict between the VE's testimony and the reasoning levels assigned by the Dictionary of Occupational Titles ("DOT") to the industrial cleaner, linen checker, and cook helper jobs (ECF No. 8 at 4-7); and (2) failing to properly evaluate the opinions from Plaintiff's two consultative examinations ("CE") (*id.* at 7-9).  Having considered the decision and the administrative record, the undersigned agrees that the ALJ erred on both counts.  While the ALJ's failure to resolve the apparent conflict in the VE's testimony was harmless, his improper evaluation of the medical opinions was not.

**V.    Analysis**

Once a claimant meets his burden of showing that he cannot perform his past relevant work at step four, the Commissioner has the burden "at step five to show that the claimant retains sufficient RFC to perform work in the national economy, given [his] age, education, and work experience."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005) (alteration omitted)).  An ALJ may rely on the testimony of a VE to satisfy this step-five burden and identify jobs that a claimant can perform, so long as all the RFC limitations are reflected in the hypothetical question propounded to the VE.  *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).[5]

Here, the ALJ posed a hypothetical question to the VE that matched the RFC set forth above, and the VE identified three unskilled jobs a hypothetical person of Plaintiff's

---

[5] In *Qualls*, the court found that where the ALJ "propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment," "the VE's answer to that question provided a proper basis for the ALJ's disability decision." *Id.*

age, education, and work history could perform: industrial cleaner, linen checker, and cook helper. (R. 21, 66-67.) The VE further testified there were 1,401,080 industrial cleaner jobs; 103,225 linen checker jobs; and 216,320 cook helper jobs in the national economy. (R. 66.) Based on this testimony, the ALJ concluded Plaintiff could perform jobs that existed in significant numbers in the national economy. (R. 24-25.) The ALJ also determined that the VE's testimony was consistent with information contained in the DOT. (R. 25.)

### A. Conflict Between the DOT and the VE's Testimony.

While an ALJ can rely on the VE's testimony at step five, this reliance has its limits. An ALJ has a duty to develop the record, which includes questioning the VE about the source of her opinions and any deviations from publications like the DOT. *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). As such, "the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Id.*; *see also* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a . . . decision about whether the claimant is disabled.").

In this case, there is an apparent conflict between the VE's testimony and the DOT's assigned "reasoning level" for the linen checker job.[6] The DOT appends a "definition trailer" to each job, which is comprised of a number of selected occupational

---

[6] While both Plaintiff and Defendant identify the job requiring a reasoning level of three as cook helper (ECF No. 8 at 6; ECF No. 12 at 7), this is incorrect. The job of cook helper requires a reasoning level of two. DOT § 317.687-010, 1991 WL 672752.

6

characteristics, including the General Educational Development ("GED") Scale. *See* DOT, App. C, 1991 WL 688702 (4th ed. 1991). The GED Scale is divided into three subparts: Reasoning Development, Mathematical Development, and Language Development. *Id.* There are six levels for each GED Scale subpart, with level one representing the lowest development level and level six representing the highest. *Id.*

The DOT assigns the job of linen checker a Reasoning Development level of three. *See* DOT § 222.387-030, 1991 WL 672098. This means the job requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.* Meanwhile, the DOT assigns the jobs of cook helper and industrial cleaner/silver wrapper a Reasoning Development level of two. *See* DOT § 317.687-010, 1991 WL 672752; DOT § 318.687-018, 1991 WL 672757. This means the jobs require the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." *Id.*

Plaintiff argues both "reasoning level 2 and reasoning level 3 appear to be in direct conflict with the ALJ's RFC . . . which limits Claimant to 'jobs with simple tasks.'" (ECF No. 8 at 4-6.) Regarding the jobs requiring a reasoning level of two, the undersigned disagrees. *See James A. M. v. Kijakazi*, No. 20-CV-00372-JED-SH, 2022 WL 1510563, at *4-6 (N.D. Okla. Jan. 26, 2022) (no conflict between reasoning level two and "simple, routine tasks"); *Ashley I. S. C. v. Kijakazi*, No. 22-CV-00201-SH, 2023 WL 5628598, at *7 (N.D. Okla. Aug. 31, 2023) (same, for "simple, routine instructions and tasks"); *see also Andria D. B. v. Kijakazi*, No. 20-CV-00439-SH, 2022 WL 873614, at *4 n.5 (N.D. Okla.

7

Mar. 23, 2022) (no perceived conflict between a reasoning level of two and an RFC for "simple, repetitive tasks").

Plaintiff is correct, however, that the Tenth Circuit has recognized an apparent conflict between jobs requiring level-three reasoning and an RFC limitation to "simple and routine work tasks." *Hackett*, 395 F.3d at 1176 (stating that an RFC limitation to simple and routine work tasks "seems inconsistent with the demands of level-three reasoning," and reversing and remanding to allow the ALJ to address this "apparent conflict"). The Commissioner does not argue there is a meaningful difference between "simple and routine work tasks" and "simple, routine and repetitive tasks," but argues that *Hackett* "did not set a categorical rule that GED reasoning level 3 is always inconsistent with an RFC for simple work." (ECF No. 12 at 8.) The Commissioner invites the Court to make its own finding—using a "case-by-case" approach—that Plaintiff could, in fact, perform a job with a reasoning level of three (despite Plaintiff's RFC limitation to "simple, routine and repetitive tasks"). (*Id.*) The Court will not supply such a critical finding in the first instance, particularly where it potentially requires (as noted below) the expert testimony of a VE. As such, the Court is left with an unresolved apparent conflict between the RFC and the linen checker job.

Once it appears there is a conflict between the VE's testimony and the DOT, the ALJ must resolve that conflict in a reasoned manner—and not with a generalized affirmation that there are "no conflicts." Rather, the ALJ "must explain the resolution of the conflict irrespective of how the conflict was identified." SSR 00-4p, at *4; *see also Haddock*, 196 F.3d at 1090 ("To allow an ALJ to elicit and rely on summary conclusions given by a VE, in the absence of contrary testimony elicited by the claimant through cross-

8

examination, would amount to shifting the burden to produce and develop vocational evidence back to the claimant."). Or, as the Social Security Administration's Ruling states,

> In these situations, the adjudicator will:
>
> Ask the VE . . . if the evidence . . . she has provided conflicts with information provided in the DOT;
>
> <u>and</u>
>
> If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, at *4 (emphasis added).

Here, the ALJ addressed the first question, but he did not proceed to step two and obtain a reasonable explanation regarding the apparent conflict. At the hearing, the ALJ asked whether the VE's testimony was "consistent with the DOT," to which the VE responded that it was. (R. 66-67.) The VE, however, did not raise, herself, the apparent conflict with the GED reasoning level, and the ALJ did not inquire about it. (*Id.*) As such, because the ALJ was required to, but did not, elicit additional testimony from the VE explaining how Plaintiff can perform level-three reasoning with an RFC limitation to simple tasks, he erred in determining that Plaintiff could perform the job of linen checker. As the Tenth Circuit has explained,

> Though the ALJ asked the VE whether his testimony was consistent with the DOT, it clearly was not . . . . Thus, there is a conflict between the VE's testimony and the job descriptions in the DOT . . . . The ALJ failed to have the VE reconcile this conflict and therefore committed reversible error. On remand, to comply with *Haddock*, the Commissioner will need to elicit a reasonable explanation as to how Mr. Paulek can perform two level-three-reasoning jobs with a limitation to carrying out simple instructions . . . .

*Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) (unpublished).[7] The ALJ's step-five determination as to the linen checker job was not supported by substantial evidence.

### B.     Sufficient Number of Jobs in the National Economy.

Having found an unresolved apparent conflict between the RFC and one, but not all, of the jobs identified by the VE, the Court must examine whether the ALJ's step-five error was harmless. The Commissioner contends that it was, because there were "over 1.5 million industrial-cleaner and linen-checker jobs" remaining. (ECF No. 12 at 8-10.) The Court agrees.

Under the Act, work exists in significant numbers in the national economy when it exists in such numbers either in the region where the claimant lives or in several other regions of the country. 42 U.S.C. § 423(d)(2)(A); *id.* § 1382c(a)(3)(B); *see also* 20 C.F.R. § 404.1566(a).[8] Determining what constitutes a significant number of jobs is normally a question of fact for the ALJ to decide based on "common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (quoting *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992)). Here, the ALJ did not find that the remaining jobs—after the removal of linen checker—existed in significant numbers in the national economy. (R. 25.) Instead, he found that, on the whole, there were sufficient jobs.[9] (R. 24-25.)

---

[7] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

[8] *See generally* 20 C.F.R. § 416.966 for Title XVI.

[9] The Court, therefore, rejects the Commissioner's argument that this case is different from *James A. M.* because "the ALJ made specific findings as to the numbers of jobs available for each occupation . . . ." (ECF No. 12 at 9-10.) The issue is not whether the ALJ made a finding as to the <u>number</u> of jobs available; the issue is whether the ALJ made a finding that this number qualified as <u>significant</u> in the national economy. Here, as in *James A. M.*, the ALJ only made such a finding as to the total number of jobs. As such, the undersigned must proceed with its harmless-error analysis.

10

A reviewing court may supply a missing dispositive finding of fact under the rubric of harmless error where "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145. However, this Court must be cautious in "deciding in the first instance that a particular number was significant under the circumstances," because it must "avoid usurping the administrative tribunal's responsibility to find the facts" and must not violate "the general rule against post hoc justification of administrative action . . . ." *Id.* at 1144-45.

The Tenth Circuit has held that an ALJ's erroneous inclusion of conflicting jobs at step five is harmless where the remaining nonconflicting jobs exist in sufficiently significant numbers in the national economy. *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (unpublished). Courts have allowed that anywhere from 152,000 remaining jobs—"the lowest number of jobs" the Tenth Circuit has considered to be sufficient for application of harmless error, *Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016) (unpublished) (citing *Stokes*)—to 1.34 million jobs, *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009), may represent a significant number for harmless error purposes. Here, the industrial cleaner job alone (1,401,080) surpasses both these numbers. As such, the Court finds the remaining number of non-conflicting jobs fall within the range previously upheld by the Tenth Circuit, and, therefore, that no reasonable factfinder could have determined that suitable jobs do not exist in significant numbers in the national economy. The ALJ's error at step five was harmless.

### C. Opinion Analysis

The ALJ's error in articulating his consideration of medical opinions, however, was not harmless. For the reasons explained below, the undersigned finds reversible error.

### 1) Drs. Pella and James' opinions

On April 17, 2021, Plaintiff presented for a CE with Dr. Kaycie Pella. (R. 420.) During the exam, Plaintiff was alert and cooperative; his thought processes were goal-directed; his mood was anxious and his affect was congruent; he became tearful when discussing prior abuse; his speech was fluent with no paraphasia; he endorsed auditory hallucinations and visual hallucinations; he denied suicidal or homicidal ideation, intent, or plan; he was fully oriented to person, place, time, and situation; he was able to provide a detailed history; his level of intellectual functioning was estimated to be within the average range; his attention was grossly intact; his judgment and insight were fair; and his reasoning and judgment in conversation were fair. (R. 422.) When given the Montreal Cognitive Assessment—which assesses "different types of cognitive abilities, including orientation, short-term memory, executive functioning, and language abilities"—Plaintiff scored a 14/22. (*Id.* ("a score of 19 and higher [is] generally considered normal").)

As a result of this examination—and Plaintiff's self-reported history (R. 420-22)—Dr. Pella opined that Plaintiff "is not capable of independently managing his funds in his own best interest"; his "prognosis is guarded"; his "ability to perform work-related mental activities including remembering information and maintaining sustained concentration appears to be severely impaired"; he "appears to be able to understand instructions," and his "ability to interact socially and adapt appears to be severely impaired at this time." (R. 423.)

Later, on July 12, 2021, Plaintiff presented for a CE with Dr. Joseph James. (R. 428.) On exam, Dr. James noted that Plaintiff was well-kempt and well nourished; able to speak intelligibly and with appropriate volume, tone, and rate; unable to maintain proper eye contact; and without apparent mannerisms, tics, or gestures indicative of any

psychopathology. (R. 429.) Further, Dr. James noted that Plaintiff had a blunted affect but good mood; logical, sequential, and goal-drive thought processes; no indications of psychosis or hallucinations in any field; intact memory during the consultation; attention and concentration sufficient for gathering pertinent details; an agreeable demeanor; and average intelligence. (*Id.*) Additionally, on the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV), Dr. James indicated Plaintiff had borderline verbal comprehension, average perceptual reasoning, low average working memory, low average processing speed, and a borderline full-scale score. (R. 428, 430.)

In light of these findings, Dr. James opined regarding the manner in which Plaintiff's "mental/cognitive impairments . . . would limit [his] capacity to perform work-related mental activities": (1) "The claimant's intellectual and psychological capacity to execute activities of daily living . . . is estimated to be adequate"; (2) "The claimant's intellectual and psychological ability to understand work/school-related activities is estimated to be adequate"; (3) "The claimant's ability to remember work/school-related information is estimated to be moderately impaired as the claimant's recent/immediate memory appears defective"; (4) "The claimant's ability to concentrate and persist in work/school-related tasks is estimated to be intermittently impaired as the claimant appears overly distractible"; and (5) "The claimant's ability to socially interact and adapt in a work/school-related environment is estimated to be moderately impaired as the claimant appears excessively hypervigilant and paranoid." (R. 431-32.) Dr. James further found Plaintiff's prognosis to be fair and opined that he could manage funds without assistance. (R. 432.)

### 2)   The ALJ's consideration of Drs. Pella and James' opinions

In his decision, the ALJ conducted a relatively terse evaluation of Dr. Pella and Dr. James' opinions, concluding both were "somewhat persuasive." (R. 23.)

Regarding Dr. Pella, the ALJ noted that at the exam, Plaintiff presented with a normal appearance, an anxious mood, and that he endorsed auditory and visual hallucinations. (R. 22.) "However, he denied any suicidal ideation," and his "intellectual function was estimated as average" with "intact attention and fair insight." (*Id.*) With these findings in mind, the ALJ determined her opinions were only somewhat persuasive, noting Dr. Pella's determination that Plaintiff's memory, sustained concentration, and social adaption were severely limited, and concluding this was "somewhat inconsistent with [her]¹⁰ exam findings indicating full orientation, grossly intact attention, and fair insight and judgment." (R. 23.) The ALJ does not appear to have evaluated Dr. Pella's opinion in light of the other evidence in the record.

Regarding Dr. James, the ALJ observed that Plaintiff "was noted with normal findings including intact memory and sufficient attention and concentration." (R. 22.) The ALJ then found Dr. James' opinion "somewhat persuasive," as his opinions that Plaintiff "would have intermittent impairment in concentration and memory and would have moderate difficulty with social activity and adaptation" appeared to be "inconsistent with the claimant's testimony that he is able to play video games for hours, go to movies and out to eat with friends as well as evaluations with findings including normal memory and concentration, intact attention, and fair judgment and insight." (R. 23 (citing

---

[10] While the ALJ did not specifically state these were Dr. Pella's exam findings, this appears to be his intention, as the findings were explicitly noted in her report. (*See* R. 422 ("The claimant was fully oriented . . . Pt. demonstrated grossly intact attention on examination. The patient's judgment and insight were fair."). The ALJ did not describe any other provider's examination results in these terms.

14

Plaintiff's testimony and Exhibits 3F, 6F, and 7F).) The ALJ does not appear to have evaluated the opinion in light of whether it was supported by Dr. James' own examination results.[11]

### 3) Medical opinions - Generally

A medical opinion is a statement from a medical source about what a claimant can still do despite their impairment and whether they have one or more impairment-related limitations or restrictions in their abilities to perform the physical, mental, or other demands of work activities, or in their ability to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2).[12] When considering a medical opinion, an ALJ does not defer or give any specific evidentiary weight to the opinion.[13] *Id.* § 404.1520c(a). Instead, the ALJ evaluates the "persuasiveness" of the opinion by considering five factors. *Id.* § 404.1520c(a) & (c). These factors include (i) the supportability of the opinion; (ii) the consistency of the opinion; (iii) the medical source's relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship); (iv) the medical source's specialization; and (v) any other factors that tend to support or contradict the opinion. *Id.* § 404.1520c(c).

---

[11] Dr. James' report was found at Exhibit 5F.

[12] *See generally* 20 C.F.R. § 416.913 for Title XVI.

[13] Nor is there a requirement for "direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question," since it is the ALJ, "'not a physician, [who] is charged with determining a claimant's RFC . . . .'" *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (*Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir.2004)). To the extent "the RFC assessment conflicts with" a medical opinion, however, "the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

Of those five factors, however, the ALJ must always explain how he considered two—supportability and consistency. *Id.* § 404.1520c(b)(2). Supportability, as Plaintiff notes, is internal to the medical source—"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Consistency is more external—"The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2). The ALJ is also required to explain how the other factors were weighed when there are two or more differing medical opinions about the same issue that are equally well-supported and consistent with the record. *Id.* § 404.1520c(b)(2)-(3).

### 4) The ALJ's assessment of Drs. Pella and James' opinions was in error

Here, the ALJ failed to provide an adequate explanation of his consideration of Drs. Pella and James' opinions. For Dr. Pella, the ALJ failed to articulate how consistent the opinion was "with the evidence from other medical sources and nonmedical sources in the claim," *id.* § 404.1520c(c)(2) (consistency). (R. 23.) Instead, the ALJ briefly compared Dr. Pella's findings with her own examination records and stopped his analysis. (*Id.*) Conversely, for Dr. James, the ALJ failed to articulate how he evaluated "the objective medical evidence and supporting explanations presented by a medical source" to support the opinion, *id.* § 404.1520c(c)(1) (supportability). (*Id.*) Rather, he merely explained how he considered the opinion to be "inconsistent" with certain other evidence in the record. (*Id.*) This was in error.

These errors were not harmless. To the extent any "harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the

general rule against post hoc justification of administrative action . . . ." *Allen*, 357 F.3d at 1145; *see also Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (The court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."). The Court would be usurping the authority delegated to the ALJ if it evaluated Drs. Pella and James' opinions using the full range of factors required by the regulations and rationalized—post-hoc—the ALJ's conclusions. As it is unclear how these differing opinions[14] factored into the RFC—which included limitations on memory, concentration, and attention despite the ALJ discounting findings on the same (R. 21)—the undersigned finds the error was not harmless.

## VI. Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **REVERSED AND REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 8th day of March, 2024.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[14] As discussed above, these opinions painted a considerably different picture of Plaintiff's mental capabilities—one finding Plaintiff incapable of independently managing funds and having a severe impairment in his ability to perform work-related mental activities (R. 423) and the other finding him capable of managing such funds and having an adequate ability to understand work-related activities (R. 431-32).